Andrew G. Watters (CA #237990)
555 Twin Dolphin Dr., Ste. 135
Redwood City, CA 94065
andrew@andrewwatters.com
+1 (415) 261-8527


Attorney for Plaintiffs
Filomeno Medina and Arlene
Valdefiera

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Filomeno Medina;<br>Arlene Valdefiera,<br><br>     Plaintiffs,<br><br>v.<br><br>Newfold Digital, Inc., a<br>Delaware corporation;<br>Banco Santander, S.A., a<br>Spanish corporation;<br>Express Technologies, Ltd., a<br>British corporation; Deutsches<br>Reisebüro GmbH & Co. OHG, a<br>German corporation;<br>Fiesta Hotels and<br>Resorts, S.L., a Spanish<br>corporation; and<br>John Does 1-20,<br><br>     Defendants. | Case no.<br><br>**COMPLAINT**<br><br>1.  Racketeering<br><br>2.  Fraud<br><br>3.  False Personation<br><br>4.  Theft<br><br>5.  B&P 17200<br><br>6.  Negligence<br><br>7.  Declaratory Relief<br><br>8.  Declaratory Relief |

1

**INTRODUCTION**

2    1.    The purpose of this action is to rectify the bilking

3    of timeshare owners who were scammed by sophisticated organized

4    criminals in a complex advance fee fraud/RICO.  The ongoing

5    scam was enabled by a willfully blind web hosting provider,

6    a negligent bank, and abuse of VPN technology operated by a

7    willfully blind VPN provider.

8

**The Racketeering Enterprise**

9    2.    A group of unidentified organized criminals

10   (Defendants John Does 1-20, or "The Criminal Defendants") are

11   actively impersonating a retired attorney, George E. Johnson,

12   Esq. of Maryland, and are using his attorney credentials in New

13   York with forged documents to scam people out of their life

14   savings via wire fraud, in violation of 18 U.S.C. sec. 1962, et

15   al.  The Enterprise began on an unknown date (November 11, 2021

16   at the latest) in an unknown location, presumed to be Mexico.

17   The Enterprise has an office in New York City, a New York City

18   phone number, working email addresses, and a fully functional

19   website and internet presence/domain name.  The domain name was

20   registered on November 11, 2021 by someone in Argentina, and the

21   domain name service and web hosting are provided by Defendant

22   Newfold Digital, Inc. ("Newfold") through its HostGator and

23   BlueHost web hosting brands.  The Criminal Defendants make use

24   of Defendant Express Technologies, Ltd.'s ("Express") ExpressVPN

25   Virtual Private Network, which has an endpoint in San Jose,

26   California as well as New York, New York.  Defendant Doe #1 is an

27   impostor who is impersonating attorney George Johnson.  Defendant

28   Doe #2 aka "Al Hamilton" is an individual who represents himself

1    as a paralegal or assistant at Mr. Johnson's law firm, but who
2    is in reality one of the unidentified criminals.  Defendant Doe
3    #3 aka "Theodore Wilkerson" is an individual who represents
4    himself as a corporate executive at an undetermined company
5    claiming to represent the buyer of the timeshare, but who is in
6    reality one of the unidentified criminals.  The purported buyer
7    of the timeshare is Defendant Deutsches Reisebüro GmbH & Co. OHG
8    ("Der.com"), which is an actual company that is primarily a tour
9    operator in Germany.  Defendant Fiesta Hotels and Resorts, S.L.
10   ("Fiesta") operates the underlying timeshare under the trade
11   name Palladium Travel Club.  Defendants Does 4-20 are unknown
12   criminals participating in the scheme in undetermined capacities.

**The Service Provider Defendants**

14       3.    Defendants Newfold Digital, Inc. ("Newfold"), Banco
15   Santander, S.A. ("Santander"), and Express Technologies, Ltd.
16   ("Express") (together, "the Service Provider Defendants") are
17   all on notice of this scam, however, they have all declined to
18   take any action, thereby permitting the Enterprise to continue
19   unabated using their services.  On information and belief, the
20   Service Provider Defendants knew and/or suspected that this scam
21   was ongoing, and have failed to take any action to prevent it.

**The Nominal Defendants**

23       4.    Der.com as well as Fiesta are merely declaratory relief
24   defendants at this time concerning the transaction fees and
25   otherwise.
26   //
27   //
28   //

1

2                            **The Claims**

3       5.    Broadly speaking, this Complaint asserts RICO

4   claims and injunctive relief against the Criminal Defendants;

5   negligence, declaratory, and injunctive relief claims against

6   the Service Provider Defendants; and declaratory relief claims

7   against the Nominal Defendants.

8                   **SUBJECT MATTER JURISDICTION**

9       6.    The gravamen of the action is a Civil RICO/wire fraud

10  case brought under 18 U.S.C. sec 1962 et al.  As such, the basis

11  for subject matter jurisdiction is a Federal Question.  In

12  addition, the District Court has Supplemental Jurisdiction over

13  the transactionally related State law claims, such as declaratory

14  relief and false personation, as well as the State law injunctive

15  relief claims.  Finally, the District Court has Original

16  Jurisdiction over RICO injunctions pursuant to 18 U.S.C. sec.

17  1964(a).

18                  **PARTIES AND PERSONAL JURISDICTION**

19      7.    Plaintiffs Filomeno Medina and Arlene Valdefiera

20  ("Plaintiffs") are natural persons and residents of California,

21  specifically this District.

22      8.    Defendant Newfold Digital, Inc. ("Newfold") is a

23  Delaware corporation that is present in this State, and that

24  has also consented to jurisdiction by way of its registration

25  with the California Secretary of State to transact business in

26  California.  This Court further has personal jurisdiction over

27  Newfold under 28 U.S.C. § 1965(b) because in any action brought

28  pursuant to the Federal RICO statute in a U.S. District Court,

1  that Court may cause parties residing in another District to

2  be summoned to that District if the "ends of justice require"

3  it. Given these facts, and that no other district has personal

4  jurisdiction over all defendants, the ends of justice require

5  this Court's exercise of personal jurisdiction over Newfold.

6      9.   Defendant Banco Santander, S.A. ("Santander") is a

7  Spanish corporation that is present in this State, and that

8  has also consented to jurisdiction by way of its registration

9  with the California Secretary of State to transact business

10  in California.  Santander is currently suspended with the

11  Secretary of State and therefore may not defend this action

12  until the suspension is cured.  This Court further has personal

13  jurisdiction over Santander under 28 U.S.C. § 1965(b) because in

14  any action brought pursuant to the Federal RICO statute in a U.S.

15  District Court, that Court may cause parties residing in another

16  District to be summoned to that District if the "ends of justice

17  require" it. Given these facts, and that no other district has

18  personal jurisdiction over all defendants, the ends of justice

19  require this Court's exercise of personal jurisdiction over

20  Santander.

21      10.  Defendant Express Technologies, Ltd. ("Express") is a

22  British corporation that is present in this State, is operating a

23  global VPN called ExpressVPN with at least one endpoint in this

24  State, and has violated California law by failing to register

25  with the Secretary of State despite transacting substantial

26  volumes of business in this State, in violation of Cal.

27  Corporations Code sec. 2105(a).  This Court further has personal

28  jurisdiction over Express under 28 U.S.C. § 1965(b) because in

1   any action brought pursuant to the Federal RICO statute in a U.S.

2   District Court, that Court may cause parties residing in another

3   District to be summoned to that District if the "ends of justice

4   require" it. Given these facts, and that no other district has

5   personal jurisdiction over all defendants, the ends of justice

6   require this Court's exercise of personal jurisdiction over

7   Express.

8       11.  Defendant Deutsches Reisebüro GmbH & Co. OHG ("Der.

9   com") is a German corporation that was the purported buyer in

10  this transaction, and that is present in this State by way of

11  its substantial business booking tours across the world and

12  acquiring timeshares.  Der.com is present in this State by virtue

13  of its purposeful availment of the State in marketing travel

14  to California residents, and because of its sufficient minimum

15  contacts with California.  Der.com has also violated California

16  law by failing to register with the Secretary of State despite

17  transacting substantial volumes of business in this State, in

18  violation of Cal. Corporations Code sec. 2105(a).  This Court

19  further has personal jurisdiction over Der.com under 28 U.S.C.

20  § 1965(b) because in any action brought pursuant to the Federal

21  RICO statute in a U.S. District Court, that Court may cause

22  parties residing in another District to be summoned to that

23  District if the "ends of justice require" it. Given these facts,

24  and that no other district has personal jurisdiction over all

25  defendants, the ends of justice require this Court's exercise of

26  personal jurisdiction over Der.com.

27      12.  Fiesta Hotels and Resorts, S.L. ("Fiesta") is a

28  Spanish corporation based in Ibiza, part of the Balearic Islands

autonomous province of Spain.  Fiesta actively advertises and
markets its timeshares in California through the use of phone
calls, emails, mailers, and targeted online ads linking to its
website.  Plaintiffs are one such customer of Fiesta, who were
roped into the timeshare arrangement through a direct mail
solicitation.  Fiesta has also violated California law by failing
to register with the Secretary of State despite transacting
substantial volumes of business in this State, in violation of
Cal. Corporations Code sec. 2105(a).  Fiesta is present in this
State by virtue of its purposeful availment of the State in
marketing timeshares to California residents, and because of its
sufficient minimum contacts with California.  This Court further
has personal jurisdiction over Fiesta under 28 U.S.C. § 1965(b)
because in any action brought pursuant to the Federal RICO
statute in a U.S. District Court, that Court may cause parties
residing in another District to be summoned to that District if
the "ends of justice require" it. Given these facts, and that no
other district has personal jurisdiction over all defendants,
the ends of justice require this Court's exercise of personal
jurisdiction over Fiesta.

13.  Doe #1 is the impostor claiming to be attorney George
Johnson.  Doe #1 lives in an undetermined location, but in any
event is present in this state and has consented to jurisdiction
in California by committing wire fraud felonies deliberately
targeted at California residents, knowing those residents to be
in California, as well as operating a VPN endpoint in California
from which he accesses the internet and furthers the racketeering
enterprise.  This Court further has personal jurisdiction over

1   Doe #1 under 28 U.S.C. § 1965(b) because in any action brought
2   pursuant to the Federal RICO statute in a U.S. District Court,
3   that Court may cause parties residing in another District to
4   be summoned to that District if the "ends of justice require"
5   it. Given these facts, and that no other district has personal
6   jurisdiction over all defendants, the ends of justice require
7   this Court's exercise of personal jurisdiction over Doe #1.

8       14.  Doe #2 is the impostor claiming to be paralegal Al
9   Hamilton at the fake law firm run by Doe #1.  This Court has
10  personal jurisdiction over Doe #2 under 28 U.S.C. § 1965(b)
11  because in any action brought pursuant to the Federal RICO
12  statute in a U.S. District Court, that Court may cause parties
13  residing in another District to be summoned to that District if
14  the "ends of justice require" it. Given these facts, and that no
15  other district has personal jurisdiction over all defendants,
16  the ends of justice require this Court's exercise of personal
17  jurisdiction over Doe #2.

18      15.  Doe #3 is the impostor claiming to be buyer's
19  representative, Theodore Wilkerson.  This Court further has
20  personal jurisdiction over Doe #3 under 28 U.S.C. § 1965(b)
21  because in any action brought pursuant to the Federal RICO
22  statute in a U.S. District Court, that Court may cause parties
23  residing in another District to be summoned to that District if
24  the "ends of justice require" it. Given these facts, and that no
25  other district has personal jurisdiction over all defendants,
26  the ends of justice require this Court's exercise of personal
27  jurisdiction over Doe #3.

28      16.  Does 4-20 are unidentified criminals who are part of

1  the enterprise in capacities that are unknown at this time.  This

2  Court further has personal jurisdiction over Does 4-20 under 28

3  U.S.C. § 1965(b) because in any action brought pursuant to the

4  Federal RICO statute in a U.S. District Court, that Court may

5  cause parties residing in another District to be summoned to that

6  District if the "ends of justice require" it. Given these facts,

7  and that no other district has personal jurisdiction over all

8  defendants, the ends of justice require this Court's exercise of

9  personal jurisdiction over Does 4-20.

10                              **VENUE**

11      17.  Venue is proper in this District pursuant to 28

12  U.S.C. § 1391(b)(2) because a substantial part of the events

13  or omissions giving rise to Plaintiffs' claims occurred within

14  this District. Venue is further proper in this District pursuant

15  to 18 U.S.C. § 1965(a) because each Defendant is found and/or

16  transacts his affairs in this District given each defendant's

17  participation or involvement in the racketeering Enterprise.

18  To the extent there are venue clauses in any of the underlying

19  documents or contracts, those venue clauses are void or voidable

20  at Plaintiffs' option due to the fraud, mistakes, and/or crimes

21  that occurred here.

22                       **GENERAL ALLEGATIONS**

23      18.  Plaintiffs own a timeshare at the Palladium Travel Club

24  in Cancún, Mexico, which is operated by Defendant Fiesta.  The

25  details are not relevant here except to state that the timeshare

26  is worth approximately $80,000.  So far, due to the criminal

27  wire fraud scam, Plaintiffs have sent at least $71,000 to Mexico

28  at the direction of the Criminal Defendants.  Plaintiffs did so

thinking they were required to advance fees for taxes and capital gains, among other issues falsely represented by the Criminal Defendants.  The Criminal Defendants also fabricated a supposed lawsuit and settlement purportedly worth some $600,000 which they used to entice Plaintiffs to send even more money to Mexico as well.  The Criminal Defendants are operating under the fake website: https://legalfirmofgeorgejohnson.com

19.  The Service Provider Defendants facilitated and supported the Criminal Defendants in the furtherance of this fraud/swindle by providing essential services to the Criminal Defendants, without which the Criminal Defendants would not have been able to operate the Enterprise.  For example, banking, web hosting, and VPN services.  The Service Provider Defendants must have known that their services were being used to further this scam.  For one, complaints about the Enterprise are impossible to miss considering that it has an entire fake website, phone, and email addresses online.  Thus, when Plaintiffs' counsel reached out to Express with a complaint, Express should have investigated and terminated the Criminal Defendants' service.  Express did not do so, thereby showing that it is aware of the scam and not taking any action.  Injunctive relief is obviously appropriate here to prevent the continued operation of the Enterprise.

## FIRST CAUSE OF ACTION

Racketeering -- Statutory Violations of 18 U.S.C. § 1964(c)

(Plaintiffs vs. the Criminal Defendants)

20.  Plaintiffs incorporate by reference and realleges the above paragraphs.

21.  Defendants' conduct, and the conduct of each Defendant

1  named herein, constitutes racketeering as set forth in 18 U.S.C.

2  § 1964(c). Specifically, Congress has defined "racketeering" to

3  include multiple instances of wire fraud, or committing fraud by

4  means of electronic transmissions over wire. The Defendants here

5  engaged in multiple instances of wire fraud, including submitting

6  multiple forged notary seals and Photoshopped wire instructions

7  via wire, in which they falsely claimed that Plaintiffs were

8  entitled to money but had to wire their own money to Mexico to

9  get the money they were entitled to.

10      22.  As detailed below, Plaintiffs allege three different

11 causes of action for Federal RICO violations. In summary,

12 Section 1962(c) provides relief against parties who engage in

13 a pattern of racketeering activity, Section 1962(a) provides

14 relief against parties who use income generated through a pattern

15 of racketeering activity, and Section 1962(d) provides relief

16 against those who conspire to violate the racketeering laws.

17 Defendants are liable under each of these three sections of the

18 statute.

19      23.  18 U.S.C. § 1964(c) allows "any person injured in his

20 business or property by reason of a violation of section 1962

21 of this chapter" to "sue therefor in any appropriate United

22 States district court and shall recover threefold the damages

23 he sustains and the cost of the suit, including a reasonable

24 attorney's fee ...."

25            **Count 1: Violation of 18 U.S.C. § 1962(c)**

26      24.  Plaintiffs incorporate by reference and reallege the

27 paragraphs set forth above.

28      25.  18 U.S.C. § 1962(c) makes it "unlawful for any person

1  employed by or associated with any enterprise engaged in, or the

2  activities of which affect, interstate or foreign commerce, to

3  conduct or participate, directly or indirectly, in the conduct

4  of such enterprise's affairs through a pattern of racketeering

5  activity . . . " 18 U.S.C. § 1962(c).

6      26.  Each Defendant, at all relevant times, is and has been

7  a "person" within the meaning of 18 U.S.C. § 1961(3) because

8  each Defendant is capable of holding, and does hold, "a legal or

9  beneficial interest in property."

10     27.  Defendants' activities include at least two acts

11  of racketeering activity since 2021. Accordingly, Defendants'

12  conduct constitutes a "pattern" of racketeering activity. 18

13  U.S.C. § 1961(5).

14     28.  One such act took place in January 2022, when the

15  Criminal Defendants, in furtherance of the activities, purpose

16  and scheme of the Enterprise, falsely and fraudulently submitted

17  forged notary seals to Plaintiffs using interstate wires, i.e.,

18  the Internet.

19     29.  A second such act took place on March 2022, when the

20  Criminal Defendants, in furtherance of the activities, purpose

21  and scheme of the Enterprise, falsely and fraudulently submitted

22  additional forged notary seals and Photoshopped wire instructions

23  to Plaintiffs using interstate wires.

24     30.  At all times relevant hereto, beginning on or around

25  November 2021 and continuing through the filing of this action,

26  each Defendant conducted and participated in the affairs of

27  the Enterprise through a pattern of racketeering activity, in

28  violation of 18 U.S.C. § 1962(c).

31.  On or around November 2021, Defendants formed an association-in-fact racketeering enterprise, described herein as the Enterprise, within the meaning of 18 U.S.C. § 1961(4).

32.  The Enterprise consists of a group of "persons" associated together for the common purpose of intentionally and willfully defrauding victims in connection with real estate transactions and otherwise, such as the timeshare transaction in this case.

33.  The Enterprise is an ongoing organization that functions as a continuing unit. The Enterprise was created and used as a tool to effectuate Defendants' pattern of racketeering activity.

34.  All Defendants agreed to and did conduct and participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity including wire fraud as defined by 18 U.S.C. § 1343, and for the unlawful purpose of intentionally defrauding Plaintiffs.

35.  The wire fraud committed by Defendants is based on a scheme developed and carried out by the Enterprise wherein the Criminal Defendants impersonate a retired attorney to create an entire fake law firm, then continue to use the same, using the stolen identity and actual attorney credentials of additional victim George E. Johnson, Esq.

36.  Defendants used the wires for the transmission, delivery, or shipment of the following by the Defendants or third parties, all of which are related to the Enterprise, and they were foreseeably caused to be sent as a result of Defendants' illegal scheme:

A. Wires between Defendants containing false documents and false representations;

B.  Email and telephone communications between Defendants and Plaintiffs; and

C.  Payments between Plaintiffs and Defendants.

37.  Defendants used the Internet and other electronic facilities to carry out the scheme and to conceal their ongoing fraudulent activities.

38.  At all times discussed herein, Defendants have been involved in a plan to scheme or defraud; have had the intent to defraud and have willfully participated in the scheme to defraud with actual knowledge of its fraudulent nature and with specific intent to defraud; and could have reasonably foreseen that interstate wires would be used; and actually used interstate wires to further Defendants' scheme.

39.  The Enterprise engaged in and affected interstate commerce by way of said wire fraud.

40.  The wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct.

41.  To achieve their common goals, Defendants knowingly and willfully concealed from the public and Plaintiffs the unlawfulness of their conduct, which was committed at the instruction of, and through the directions of, organized criminals.

42.  As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Plaintiffs have been injured in their business and property, causing Plaintiff to suffer monetary damages in an amount not less than $71,000, said

1   damages to be proven at the time of trial.

2       43.   Because of Defendants' violations of 18 U.S.C. §

3   1962(c), Defendants are liable to Plaintiff for three times the

4   damages Plaintiffs have sustained, plus the cost of this suit,

5   including reasonable attorneys' fees.

6                **Count 2: Violation of 18 U.S.C. § 1962(a)**

7       44.   Plaintiffs incorporates by reference and reallege the

8   paragraphs set forth above.

9       45.   18 U.S.C. § 1962(a) makes it "unlawful for any person

10  who has received any income derived, directly or indirectly,

11  from a pattern of racketeering activity . . . to use or invest,

12  directly or indirectly, any part of such income, or the proceeds

13  of such income, in acquisition of any interest in, or the

14  establishment or operation of, any enterprise which is engaged

15  in, or the activities of which affect, interstate or foreign

16  commerce." 18 U.S.C. § 1962(a).

17      46.   As alleged in paragraph 206, each Defendant, at all

18  relevant times, is and has been a "person" within the meaning of

19  18 U.S.C. § 1961(3).

20      47.   As alleged in the preceding section, Defendants'

21  conduct constitutes a "pattern" of racketeering activity. 18

22  U.S.C. § 1961(5).

23      48.   At all times relevant hereto, beginning on or around

24  November 2021 and continuing at least through the eventual

25  termination of the scheme, Defendants received income derived

26  from a pattern of racketeering activity to use or invest a

27  part of such income or the proceeds of such income in the

28  establishment and operation of an enterprise that is engaged

1  in, or the activities of which affect, interstate or foreign

2  commerce, in violation of 18 U.S.C. § 1962(a).

3      49.  As alleged in the preceding section, on or around

4  November 2021, Defendants formed the Enterprise to effectuate

5  Defendants' pattern of racketeering activity.

6      50.  All Defendants agreed to and did use income received

7  directly from a pattern of racketeering activity to control,

8  establish and operate the Enterprise, which was engaged in and

9  affected interstate commerce, including wire fraud as defined by

10 18 U.S.C. § 1343, and for the unlawful purpose of intentionally

11 defrauding Plaintiffs.

12     51.  The wire fraud committed by Defendants is set forth in

13 the preceding section and is incorporated by reference herein.

14     52.  As a direct and proximate consequence of the conduct

15 of Defendants and each of them as alleged herein, Plaintiffs have

16 been injured in their business and property, causing Plaintiffs

17 to suffer monetary damages in an amount not less than $71,000,

18 said damages to be proven at the time of trial.

19     53.  Because of Defendants' violations of 18 U.S.C. §

20 1962(a), Defendants are liable to Plaintiffs for three times the

21 damages Plaintiffs have sustained, plus the cost of this suit,

22 including reasonable attorneys' fees.

23           **Count 3: Violation of 18 U.S.C. § 1962(d)**

24     54.  Plaintiffs incorporate by reference and reallege the

25 paragraphs set forth above.

26     55.  18 U.S.C. § 1962(d) makes it "unlawful for any person

27 to conspire to violate any of the provisions of subsection (a),

28 (b) or (c) of this section."

56.  As alleged in the preceding sections, each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

57.  At all relevant times, beginning in or around November 2021 and continuing at least through the termination of the scheme, the Defendants and each Defendant agreed to and did conspire to violate 18 U.S.C. §§ 1962 (a) and (c), as alleged above and incorporated herein, in violation of 18 U.S.C. § 1962(d). The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the Enterprise described above; and to receive income derived from a pattern of racketeering activity and to use such income or the proceeds of such income in the establishment and operation of that enterprise.

58.  Defendants have knowingly, willfully and intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the enterprise described previously through a pattern of racketeering activity (wire fraud).

59.  Defendants have knowingly, willfully and intentionally conspired and agreed to receive income derived from a pattern of racketeering activity (wire fraud) and to use such income or the proceeds of such income in the establishment and operation of the enterprise described previously.

60.  Defendants knew that their actions as alleged above were part of a pattern of racketeering activity and agreed to the commission of those acts to further the conspiratorial scheme described above.

61.  Defendants' conduct constitutes a conspiracy to

1  violate 18 U.S.C. §§ 1962(c) and (a), in violation of 18 U.S.C. §

2  1962(d).

3      62.  As a direct and proximate consequence of the

4  Defendants' conspiracy, the overt acts taken in furtherance

5  of that conspiracy, and violations of 18 U.S.C. § 1962(d),

6  Plaintiffs have been injured in their business and property,

7  causing Plaintiffs to suffer monetary damages in an amount not

8  less than $71,000, said damages to be proven at the time of

9  trial.

10      63.  Because of Defendants' violations of 18 U.S.C. §

11  1962(d), Defendants are liable to Plaintiff for three times the

12  damages Plaintiff has sustained, plus the cost of this suit,

13  including reasonable attorneys' fees.

14  **SECOND CAUSE OF ACTION**

15  (Plaintiffs vs. the Criminal Defendants)

16  Fraud

17      64.  Through the foregoing course of conduct, the Criminal

18  Defendants committed fraud, including but not limited to:

19      a.  Representing that funds of Plaintiffs were necessary to

20  receive funds they were owed, also known as an advance fee fraud.

21      b.  Knowing the representations were false.

22      c.  Causing Plaintiffs, in reasonable reliance on the

23  representations, to wire money to Mexico.

24      65.  Plaintiffs suffered harm of at least $71,000 in lost

25  money that they wired to the Criminal Defendants.

26      66.  Wherefore, Plaintiffs pray for compensatory damages and

27  punitive damages according to proof.

28  //

1 | **THIRD CAUSE OF ACTION**

2 | (Plaintiffs vs. the Criminal Defendants)

3 | False Personation

4 | 67.   Through the foregoing course of conduct, the Criminal

5 | Defendants impersonated a retired attorney in the furtherance of

6 | their scheme, in violation of Cal. Penal Code sec. 529.

7 | 68.   Wherefore, Plaintiffs pray for compensatory damages and

8 | punitive damages according to proof

9 | **FOURTH CAUSE OF ACTION**

10 | (Plaintiffs vs. the Criminal Defendants)

11 | Grand Theft

12 | 69.   Through the foregoing course of conduct, the Criminal

13 | Defendants stole $71,000 from Plaintiffs in violation of Cal.

14 | Penal Code sec. 532.

15 | 70.   Wherefore, Plaintiffs pray for compensatory damages,

16 | punitive damages, and attorney fees according to proof

17 | **FIFTH CAUSE OF ACTION**

18 | (Plaintiffs vs. the Criminal Defendants)

19 | B&P 17200

20 | 71.   Through the foregoing course of conduct, the Criminal

21 | Defendants violated Business and Professions Code sec. 17200 with

22 | predicate violations of the Penal Code as described above.

23 | 72.   Wherefore, Plaintiffs pray for disgorgement and

24 | injunctive relief.

25 | **SIXTH CAUSE OF ACTION**

26 | (Plaintiffs vs. the Service Provider Defendants)

27 | Negligence

28 | 73.   Through the foregoing course of conduct, the Service

Provider Defendants negligently furthered the Enterprise.

### Count One – Web Hosting

### Newfold Digital, Inc.

74.  Newfold hosts the Criminal Defendants' fake law firm website and has not terminated the service despite knowing of or negligently failing to discover the scheme.  As such, Newfold was negligent in supporting these criminals and causing Plaintiffs' loss of $71,000.

### Count Two – Email Service

### Newfold Digital, Inc.

75.  Newfold hosts the Criminal Defendants' email system and has not terminated the service despite knowing of or negligently failing to discover the scheme.  As such, Newfold was negligent in supporting these criminals and causing Plaintiffs' loss of $71,000.

### Count Three – Banking

### Banco Santander, S.A.

76.  Santander received wires from Plaintiffs and allowed the Criminal Defendants to take the money, despite knowing of or negligently failing to discover the scheme.  As such, Santander was negligent in supporting these criminals and causing Plaintiffs' loss of $71,000.

### Count Four – VPN Service

### Express Technologies, Ltd.

77.  Express provided and continues to provide VPN service to the Criminal Defendants, despite knowing of or negligently failing to discover the scheme.  As such, Express was negligent in supporting these criminals and causing Plaintiffs' loss of

1  $71,000.

2    78.  Wherefore, Plaintiffs pray for damages of $71,000 or

3  according to proof.

4                    **SEVENTH CAUSE OF ACTION**

5          (Plaintiffs vs. the Service Provider Defendants)

6                        Declaratory Relief

7    79.  Through the foregoing course of conduct, there is

8  now a controversy between Plaintiffs and the Service Provider

9  Defendants concerning their rights and responsibilities in

10 connection with the Enterprise and monies sent by Plaintiffs

11 to the Enterprise by way of the Service Provider Defendants'

12 services.

13   80.  Wherefore, Plaintiffs pray for a decree stating their

14 rights and obligations and those of the Defendants, as well as

15 an injunction freezing the Criminal Defendants' accounts in the

16 amount of the claim, $71,000, and mandating the return of the

17 funds.

18                    **EIGHTH CAUSE OF ACTION**

19           (Plaintiffs vs. the Nominal Defendants)

20                        Declaratory Relief

21   81.  Through the foregoing course of conduct, there is

22 now a controversy between Plaintiffs and the Nominal Defendants

23 concerning their rights and responsibilities in connection with

24 the Enterprise and monies sent by Plaintiffs to the Enterprise by

25 way of the Service Provider Defendants' services.

26           **Count One – Rescission and Non-Liability**

27                        Der.com

28   82.  Plaintiffs have, through the transaction orchestrated

1  by the Enterprise, become allegedly liable to complete the

2  transaction with Der.com.

3      83.   Wherefore, Plaintiffs pray for a decree that they are

4  not obligated to do anything further with Der.com and have no

5  liability to Der.com due the criminal conduct of the Enterprise

6  and the fact that the transaction is a complete fabrication.

7                    **Count Two – Transfer Fee**

8                             Fiesta

9      84.   Plaintiffs have, through the transaction orchestrated

10 by the Enterprise, become allegedly liable for a transfer fee

11 charged by Fiesta in the approximate amount of $8,000.

12     85.   Wherefore, Plaintiffs pray for a decree that they

13 are not obligated to pay the transfer fee charged by Fiesta due

14 the criminal conduct of the Enterprise and the fact that the

15 transaction is a complete fabrication.

16                            **PRAYER**

17     1. Finding that all Defendants except the Nominal Defendants

18 are jointly and severally liable for all damage caused to

19 Plaintiffs;

20     2. Awarding Plaintiffs monetary damages in an amount not

21 less than $71,000 or according to proof;

22     3. Awarding Plaintiffs treble monetary damages pursuant to

23 18 U.S.C. § 1964(c);

24     4. Awarding Plaintiffs litigation expenses, including

25 reasonable attorneys' fees, costs, and disbursements;

26     5. Awarding Plaintiffs punitive damages against the Criminal

27 Defendants in the sum of not less than $1,000,000 or an amount

28 otherwise to be decided at trial; and

1      6.   Declaratory relief as to the rights of Plaintiffs, the

2 obligations of the Defendants, and non-obligations of Plaintiffs.

3      7. Awarding Plaintiff a permanent RICO injunction against

4 the Enterprise, as well as permanent injunctions against the

5 Service Provider Defendants, plus State law injunctions as

6 appropriate, in a form to be submitted following the filing of

7 this action.[1]

8      8. Granting such other relief as the case may require or as

9 may be deemed proper and equitable.

10

11      Date: March 20, 2022

                                *Andrew G. Watters*
                                _____
12                               Andrew G. Watters, Esq.
                                Attorney for Plaintiffs
13                               Filomeno Medina and Arlene
                                Valdefiera

14

15

16

17

18

19

20

21

22

23

24

25

26

27  _____
    1    Time is of the essence in filing this action for the
    purposes of records preservation/ESI; accordingly, the proposed
28  injunctions are not attached to this complaint.

Exhibit A

ANDREW G. WATTERS, ESQ.
LITIGATION ATTORNEY

555 TWIN DOLPHIN DR. STE. 135
REDWOOD CITY, CA 94065 · +1 (415) 261-8527
ANDREW@ANDREWWATTERS.COM

---

**Precedence:** Routine                    **Date:** March 18, 2022

**To:**   FBI San Francisco
          Attn: Special Agent █████████

**From:**  Andrew G. Watters
           555 Twin Dolphin Dr., Ste. 135
           Redwood City, CA 94065
           +1 (415) 261-8527
           andrew@andrewwatters.com

**Case:**  ██████ v. Doe

**Title:** Unknown Suspects
           George E. Johnson, Esq. (victim)
           ████████████ (victim)
           18 U.S.C. sec. 1343, et al.
           Report of Investigation

**Synopsis:** To provide a summary of information developed to date
in this wire fraud/RICO case involving Mexican timeshares and the
stolen identity of a retired attorney.

**Details:**

**Introduction**

   I am a lawyer in California (#237990), and I also offer
investigative services pursuant to Business and Professions Code
sec. 7522(e) and 7582.2(e), which exempt licensed attorneys
from the private investigator licensing law.  I often go on to
represent the same individuals in litigation.

   On March 15, 2022, I was hired on an emergency basis to
represent ████████████.  Mr. ████████ asked me to look at his
timeshare transaction to see whether it was bona fide before he
wired another $20,000 to Mexico (he has already put in around
$50,000).  I've concluded the transaction is part of a complex
advance fee fraud/RICO for the reasons indicated here, and I'm
issuing this report with supporting data and files with Mr.
████████ authorization.

**Background**

   ████████████ and his spouse own a timeshare at the Palladium
in Cancún, Mexico, the details of which are not relevant here.
They wanted to sell the timeshare and were approached in early
2022 by a purported law firm in New York City that specializes in

1

To: FBI San Francisco          From: Andrew G. Watters, Esq.
Re: George E. Johnson 3/18/2022

these types of transactions and was representing the prospective
buyer.  The "Legal Firm of George Johnson" has a website[1],
email, and phone number online.  I visited the firm website at
approximately 11:48 a.m. on March 15, 2022 as Mr. ▓▓▓▓▓▓ was
in my office sharing the details of the transaction with me.[2]
The domain name was registered in November 2021 by someone in
Argentina, according to publicly available whois information.
Critically, the nameserver shown on the domain is
ns11.2.hostgator.mx, which is in Mexico.  A lawyer would not
normally claim to have his office and phone in New York City
while registering his domain from Argentina with nameservers in
Mexico.

There is a George Johnson attorney in New York, but he has no
registered address on his official court profile/attorney license
page.  Public records from LexisNexis reveal that Mr. Johnson
is also admitted in Maryland.  I reached out to Mr. Johnson
and was able to speak with him at length on March 18, 2022 (see
attached FD-302).  In summary, Mr. Johnson is a retired attorney
who is dual-admitted in New York and Maryland.  He confirmed his
attorney license number over the forged signatures as being his
correct license number, and he denied being involved with the
scam.  It was news to him that someone is claiming to be him in
New York City.  I provided him a download link for the underlying
documents and invited him to reach out again if he has comments
after reviewing the documents.

The office shown on the fake website is a virtual/shared office
in New York City, and it appears the suspects use Google voice
from abroad.  But the call center answering the law firm's
number is definitely American.  It may be shared reception at the
virtual office.

The PDF documents purportedly bearing Mr. Johnson's notarized
signature were created in Adobe Illustrator, and the electronic
files clearly show that the signatures and notary seals were
dropped in with Illustrator.  Also, the documents create illegal
obligations for a lawyer to make, such as guarantying client
debts.  The wire instructions were Photoshopped and not created
on the date represented in the document.

I posed as an occasional investor who was considering bankrolling
my client's transaction, however, the client mistakenly cc'ed me
on the email that I asked him to send to the suspects instead of
bcc'ing me.  In any case, the suspects still clicked on that link
and I captured their VPN IP addresses and access patterns.

---

1    https://legalfirmofgeorgejohnson.com/
2    The first entry in my web server log files shows an access
referred by a Google search at 11:49:46 a.m. on March 15, 2022,
approximately a minute and a half after my client arrived.
From this, I infer that the suspects have real-time web server
monitoring in place and are looking up interesting visitors as
they access the site, just like I do with my own websites.

To: FBI San Francisco           From: Andrew G. Watters, Esq.
Re: George E. Johnson 3/18/2022

The VPN has an endpoint in San Jose, and coincidentally, there is
another endpoint in New York.  The VPN is reportedly on a leased
IP block.  I asked the owner of that IP block (██████████
-- administered by Mr. ████████) about this, and he seems to
be providing helpful information so far.  He claims ExpressVPN
leased that block under a Letter of Authorization, and he shared
an email from him to CDN77, which he represented as ExpressVPN's
upstream provider, as evidence of the LOA.  He declined to
provide the actual LOA, indicating that he needed ExpressVPN's
permission.  I sent ExpressVPN notice to preserve their logs for
that ASN, in any case.

The client indicated that there was a buyer involved in the
transaction, Ted Wilkerson, who was calling him to follow up as
well.  The client provided a phone number, and I called "Ted
Wilkerson" at +1 (888) 384-4622 on March 16, 2022.  Mr. Wilkerson
identified himself as "Theodore Wilkerson" when answering the
phone.  He stated he is a corporate officer/executive in the
company that is acquiring Mr. ██████ timeshare, and he wanted
to know the status of the transaction.  It was an awkward
conversation in which we were each trying to see what the other
knew.  Mr. Wilkerson didn't give any details, including where in
the world he claims to be.  However, he sounded fully American.
I told him to forget about the deal and proceed accordingly.  He
then called my client several times and I instructed my client to
not answer.

The suspects then sent a demand letter to my client, again
purportedly from Mr. Johnson, and the suspects are still trying
to get money from my client even though I called them out and
also emailed them directly accusing them of being a criminal
racketeering enterprise.  I am intending to shut down at least
their website and email with an injunction in District Court in
the near future, if my client can financially justify proceeding.

Separately, on March 17, 2022, I spoke with the manager of
Palladium, Mr. ████████, at +1 ██████████.  Mr. █████
had previously indicated that Mr. █████ claimed Palladium has
had previous transactions involving the George Johnson law
firm that worked out.  When I spoke with Mr. ██████ I gave him
a summary of my findings to date, and he seemed only mildly
surprised.  The conversation focused on Palladium denying Mr.
███████ request for a refund of the transfer fee because the
refund would require a mutual agreement, and the buyer was not
agreeing.  Mr. █████ offered his assistance and invited me to
send him a letter or other documentation.

**Conclusion**

This is a multi-layered advance fee fraud/RICO involving
sophisticated criminals, most of whom appear to be located
in Mexico or elsewhere in South America.  However, there is
potential for an American connection given the brazen use of
a virtual office in New York City and the possible willful

To: FBI San Francisco          From: Andrew G. Watters, Esq.
Re: George E. Johnson 3/18/2022

blindness of the timeshare company.  The "buyer" connection might
be investigated further to see whether Mr. Wilkerson is a real
person and in the U.S.  Searching LexisNexis reveals a number of
Ted Wilkersons, but the client's resources do not permit pursuing
all of those leads.

**Recommendations:**

     Set leads described below.

**Leads:**

Lead 1:

     Issue National Security Letter to [REDACTED]  and
ExpressVPN, both of which are reachable in the U.S., to capture
the underlying IP addresses of the suspects who searched Google
for my name at 11:58 a.m. on March 15, 2022.

Lead 2:

     Interview [REDACTED]  in [REDACTED]  concerning his
arrangement with ExpressVPN for the IP block that contains the
suspects' VPN endpoint.

Lead 3:

     Interview George Johnson in [REDACTED]  to gain insight
as to why the suspects selected him.

Lead 4:

     Locate Theodore Wilkerson.

     ◊◊

FD-302 (Rev. 10-6-95)

- 1 -

Andrew G. Watters, Esq.

Date of transcription 3/18/2022

Telephonic interview of:

George E. Johnson, Esq.

On March 18, 2022, I spoke with George E. Johnson, who related the following:

Mr. Johnson is a retired attorney who is admitted in New York and Maryland.  He never had an active practice in New York, and he is surprised that anyone would think he was currently practicing in New York City because he has been retired for many years.  It is a shock to him to learn that someone has created an entire online identity impersonating him in connection with transactions involving Mexican time shares.  The suspects have his correct attorney license number.

I asked for his email address in order to provide a sample of his forged signature and the forged notary seals.  He asked his wife, Ms. ▨ Johnson (who I could hear in the background) if he should provide me his email address.  She advised him not to provide his email address, so I invited him to verify my identity online through the State Bar of California and on my website, and then call back with his email address if desired.  I provided him the contact information of Special Agent ▨ at the FBI field office in San Francisco, with a suggestion to call if he wished to speak with anyone about these crimes.

Mr. Johnson calld back a few minutes later and stated that he left a message at FBI San Francisco and will be filing a complaint with the Federal Trade Commission concerning identity theft.  He asked for the underlying documents, so I texted him a download link.

Investigation on 3/18/2022   at ▨

File # ▨   Date dictated 3/18/2022

by   Andrew G. Watters

This document contains neither recommendations nor conclusions of Andrew G. Watters.  It is the property of Andrew G. Watters and is loaned to your agency; it and its contents are not to be distributed outside your agency.